IN THEUNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No.   14 CR 696 - 1 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| MICHAEL FLORES | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Michael Flores has moved to quash the search warrants and suppress evidence obtained from the execution of the warrants [41]. For the reasons stated below, the Court denies the motion.

## BACKGROUND

On November 24, 2014, agents for the Drug Enforcement Administration ("DEA") arrested Defendant Flores during the course of a controlled heroin deal in a parking lot outside the U-Haul Moving & Storage of South Loop facility located at 500 W. Cermak in Chicago. (R. 41, Ex. 1 at 9.)

On August 12, 2015, the grand jury returned a Superseding Indictment ("Indictment") charging Defendant Flores and co-defendant Oscar Garcia. (R. 46.) Count One of the Indictment charges Defendant Flores with knowingly and intentionally possessing with the intent to distribute heroin, in violation of 21 U.S.C. §841(a)(1). (*Id*. at 1.) Count Two charges Defendant Flores with knowingly and intentionally possessing with the intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1). (*Id*. at 2.) Defendant Flores has pled not guilty to both counts. (R. 53.)

ANALYSIS

Defendant Flores seeks to quash the search warrants and suppress the evidence seized during the search of both the storage locker and work loft on the following grounds: 1) the search warrant affidavits contained a material false statement; 2) the agents illegally entered part of the U-Haul facility, Defendant Flores's work loft, and possibly his storage locker, all before securing search warrants; and 3) the agents illegally searched the storage locker and work loft using a drug dog to sniff the hallways outside of both before securing search warrants.[1]

**I.** *Franks* **Analysis**

    **A.**     **Legal Standard**

"The Fourth Amendment protects citizens against unreasonable searches and seizures." *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013). The Amendment shields citizens from law enforcement action, stating that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation[.]" U.S. Const. amend. IV. Specifically, this prerequisite "requires that . . . the police must obtain a warrant from a neutral magistrate before searching private property." *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013). Probable cause exists when "there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.*, citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d. 527 (1983). To conduct this assessment, magistrate judges consider the "totality of the circumstances," often comprised of an "officer's warrant affidavit [used] to justify the search." *Id*.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that intentionally or recklessly submitting false statements in an affidavit submitted in

---

[1] Additionally, Defendant Flores argues that he "had an expectation of privacy in the [locker and loft] and has standing to challenge the search of its premises." (R. 41 at 4.) The government, however, does not contest Defendant's standing to challenge the interior searches of the storage locker and work loft. (R. 43 at 3.)

support of a search warrant violates the Fourth Amendment. The *Franks* framework also applies if the affiant intentionally or recklessly omitted material information from the affidavit. *See United States v. Carmel*, 548 F.3d 571, 577 (7th Cir. 2008).

The affidavit, however, has a "presumption of validity." *Franks*, 438 U.S. at 171. To obtain a *Franks* hearing, a defendant must establish that "(1) the warrant affidavit contained a false statement or omitted a statement; (2) the affiant made or omitted the statement either intentionally or recklessly; and (3) the statement was material or necessary to the finding of probable cause." *United States v. Prideaux-Wentz*, 543 F.3d 954, 962 (7th Cir. 2008); *see also United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) ("To obtain a *Franks* hearing, the defendant must make a substantial preliminary showing[.]") (citations omitted). As the Seventh Circuit has stated, "[i]t is relatively difficult for a defendant to make the 'substantial preliminary showing' required under *Franks*." *McMurtrey*, 704 F.3d at 509. As a result, "*Franks* hearings are rarely held." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001), quoting *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000).

Importantly, the false or omitted facts "must be 'material' to the probable cause determination" to trigger a *Franks* hearing. *United States v. Norris*, 640 F.3d 295, 302 (7th Cir. 2011). "[A]n omitted detail is material only if its inclusion would upset a finding of probable cause." *United States v. McDuffy*, 636 F.3d 361, 363 (7th Cir. 2011). Indeed, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72; *see also McMurtrey*, 704 F.3d at 509 ("To obtain a hearing, the defendant must also show that if the deliberately or recklessly false statements were

3

omitted, or if the deliberately or recklessly misleading omissions included, probable cause would have been absent.").

B.     **The Search Warrants**

The following relevant facts are taken from DEA Special Agent James Lee's affidavits in support of his application for search warrants to search Defendant Flores's storage locker (R. 41, Ex. 1.) and work loft. (R. 41, Ex. 2.) On or about November 24, 2014, DEA agents observed Defendant Flores exit a U-Haul storage facility at 500 W. Cermak and arrested him following a controlled heroin deal. (R. 41, Ex. 1 at 8.) In Defendant Flores's vest pocket, the agents discovered a plastic bag containing a substance that subsequent field tests confirmed was approximately 104 grams of heroin. (*Id*. at 9). Additionally, the agents discovered a U-Haul self-storage security access card and a key bearing the U-Haul name on Defendant Flores's person. (*Id*.) The agents then entered the U-Haul storage facility and asked the manager whether Defendant Flores rented any storage lockers or work lofts. (*Id*.) The manager informed the agents that Defendant Flores leased storage locker 2340 and work loft 401B. (*Id*.)

At this point, the affidavits and the DEA's Report of Investigation (R.41, Ex. 3.) differ as to whether the agents entered Defendant Flores's work loft prior to receiving a warrant. According to the affidavits, "[a]n agent inserted two of the other keys into locks on the door for work loft 401B, and confirmed that the keys fits [sic] those locks, but the agent did not open the door." (R. 41, Ex. 1 at 9.) The government concedes that this statement in each affidavit is not accurate. Instead, as reflected in the Report, the agents "were able to hear voices and the sound of a large dog barking coming from within work loft 401B. Agents attempted to make contact by knocking and giving verbal commands requesting that the door be opened to the unit, which was met with negative results." (R. 41, Ex. 3, at 1.) After knocking and announcing a number of

4

times, the agents discovered that one of the keys fit into the work loft's lock. (*Id*. at 1-2.) Subsequently, the agents "made entry to the loft, announcing their office numerous times and secured the loft. The voices were found to be coming from a television that was left on inside work loft unit #401B. The barking was determined to be coming from an adjoining unit. [The agents] cleared the loft checking for any occupants with negative results." (*Id*. at 2.) The Report concludes that "[the agents] then exited the loft, secured the door, and maintained security in the hall until the execution of the search warrant." (*Id*.)

Next, the DEA agents, a Cook County Sheriff's Police Canine Officer, and his canine partner, "Colt," conducted a "drug sniff" outside of both Defendant Flores's storage locker and work loft. (R. 41, Ex. 2 at 10.) Upon passing storage locker 2340's door, Colt gave a positive alert for narcotics by sitting down. (*Id*.) When walking past work loft 401B, however, Colt gave no such alert. (*Id*.)

Finally, the DEA agents, with the facility manager's permission, observed video footage from the facility's surveillance cameras. (*Id*.) The footage showed Defendant Flores entering, and exiting, work loft 401B and the U-Haul facility immediately before his arrest. (*Id*. at 11.) Special Agent Lee submitted the above affidavit facts in two applications to the Magistrate Judge for warrants to search Defendant Flores's storage locker and work loft. The Magistrate Judge issued both.

    **C.**    **Defendant Has Failed to Meet his Burden for a *Franks* Hearing**

Here, the Court is not persuaded by Defendant Flores's argument that he "is entitled to a Franks [sic] hearing because the Affidavit contains a material falsehood." (R. 41 at 5.) The DEA's affidavits submitted to the Magistrate Judge do state that "the agent did not open the [loft] door" prior to receiving the search warrants. (R. 41, Ex. 1 at 9.) The government agrees

5

that this statement is not accurate. A false statement such as this, however, is not sufficient on its own to warrant a *Franks* hearing because it is not material. *See United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009), citing *Swanson*, 210 F.3d at 791 ("Even if the police's failure to corroborate the informant's claims was negligent, 'a little negligence–actually even a lot of negligence–does not the need for a *Franks* hearing make.'"); *see also United States v. Daoud*, 755 F.3d 479, 488 (7th Cir.) *supplemented*, 761 F.3d 678 (7th Cir. 2014) ("This requires [the defendant] to do much more than point out inaccuracies in the warrant affidavit."). The false statement must be material. *See Maro*, 272 F.3d at 821, citing *Swanson*, 210 F.3d at 791 ("an unimportant allegation, even if viewed as intentionally misleading, does not trigger the need for a *Franks* hearing.").

This Court finds that the false statement regarding the agents' pre-warrant presence in the work loft falls far short of material. According to the Seventh Circuit, "courts are 'entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense[.]'" *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014), citing *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009). As the government notes in its response, the following relevant facts reported in the DEA's affidavit, corroborated by the corresponding investigation report, and unchallenged by Defendant Flores remain after removing the false statement at issue:

> (1) "DEA agents arrested [Flores]. In a pocket of a vest worn by FLORES, an agent recovered a plastic bag containing a substance which appeared to be heroin. An agent weighed and conducted a field test of the substance, yielding a positive result for heroin[.]"). (R. 41, Ex. 1 at 8.); *see also* (R. 41, Ex. 3 at 1).

6

(2) "[F]ollowing FLORES's arrest, agents recovered a U-Haul self-storage security access card from FLORES's wallet, and a key ring with five keys that was in his pocket. Among the keys on the key ring was key [sic] bearing the name U-Haul." (R. 41, Ex. 1 at 9.); *see also* (R. 41, Ex. 3 at 1).

(3) "[A]gents asked the manager of the U-Haul business whether FLORES rented any storage lockers and lofts in the facility. The manager confirmed that he did, providing the unit number 2340 as FLORES's storage locker and unit number 401B as FLORES's work loft." (R. 41, Ex. 1 at 9); *see also* (R. 41, Ex. 3 at 1.)

(4) "The [U-Haul facility] manager also displayed to agents video footage from surveillance cameras on the premises of the U-Haul building . . . The video further showed that at approximately 12:02p.m., persons resembling FLORES and ZAVALA entered work loft number 401B and at approximately 12:11p.m., FLORES and ZAVALA exited that work loft, shortly before the time when FLORES and ZAVALA were arrested." (R. 41, Ex. 2 at 10-11); *see also* (R. 41, Ex. 3 at 1).

The agents arrested Defendant Flores for possession of heroin. Drugs and keys were found on Defendant Flores's person. Testimonial and video evidence showed the arrestee entered and exited a specific location immediately prior to the arrest. These unchallenged facts on their face established probable cause, as a reasonably prudent person could still have found that a search of the location would uncover evidence of a crime. *See McMurtrey*, 704 F.3d at 508.

Consequently, the Court finds that the affidavit's false statement was immaterial and fails to trigger a *Franks* hearing. Defendant Flores fails to show that the statement, despite being false, was "necessary for the judicial officer to conclude probable cause existed." *Norris*, 640

7

F.3d at 301-02, citing *United States v. Taylor*, 471 F.3d 832, 838-39 (7th Cir. 2006). In other words, "the information was of such minimal significance," that its inclusion could not "reasonably have affected the magistrate's judgment in finding probable cause to search." *United States v. McNeese*, 901 F.2d 585, 594 (7th Cir. 1990), *overruled on other grounds by United States v. Westmoreland*, 240 F.3d 618, 632-33 (7th Cir. 2001). Thus, Defendant has not made the required "substantial preliminary showing," and a *Franks* hearing is not warranted.

## II.     U-Haul Facility's "Private" Floors and Defendant's Storage Locker

Next, Defendant Flores argues that the agents violated his Fourth Amendment rights by illegally searching "the private floors of the U-Haul facility where the storage units and work lofts are located." (R. 41 at 7) Additionally, Defendant Flores suggests that the agents may have illegally searched "Mr. Flores's storage locker." (*Id.* at 9.) Given the lack of factual evidence to support either of these arguments, the Court finds that an evidentiary hearing is not warranted at this time and that Defendant Flores has failed to provide any basis to suppress based on the record before the Court.

The Seventh Circuit has held that "evidentiary hearings are warranted only when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) (citations and quotation marks omitted). Indeed, "evidentiary hearings on motions to suppress are not granted as a matter of course but are held only when the defendant alleges sufficient facts which if proven would justify relief." *Id.*, quoting *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). Given that Defendant Flores requested the hearing, he "[bears] the burden of showing that there were disputed issues of material fact

necessitating an evidentiary hearing." *United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988).

Defendant Flores claims that "entry into the work lofts and storage lockers requires an access card" and that "the general public is not allowed in these areas." (R. 45 at 4.) Furthermore, he conclusively states that "to gain access to the floors where the private lockers and work units are, the officers would need permission or a warrant." (R. 41 at 8.) Defendant has failed to submit any evidence to support these assertions. In addition, Defendant Flores contends that the agents possibly entered his storage locker before securing a search warrant. (R. 41 at 9.) ("And while the Affidavit indicates officers did not enter or search Mr. Flores' [sic] storage locker (#2340), but only inserted the key to confirm it fit, the troubling circumstances surrounding the agents' denial of the work loft search naturally casts doubt on this claim.") He explicitly admits, however, that this claim "can neither be confirmed nor refuted." (*Id.*) Without more, the Court finds that Defendant Flores's facility and locker claims fail to present disputed issues of material fact. Therefore, an evidentiary hearing on these matters is not warranted. In addition, as discussed in detail below, Defendant Flores did not have a reasonable expectation of privacy in the hallways outside of the storage lockers and work lofts. The Fourth Amendment only protects areas where a person has a "reasonable expectation of privacy." *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007).

### III. Defendant's Work Loft

Defendant Flores next argues that "[h]aving had no valid justification for entering and searching Mr. Flores' [sic] work loft without consent or a warrant, the police officers violated his Fourth Amendment rights." (R. 41 at 9.) In support of this argument, Defendant Flores relies on the DEA Report of Investigation: "[Agents] made entry to the loft . . . and secured the loft. . . .

9

[Agents] then exited the loft, secured the door, and maintained security in the hall until the execution of the search warrant." (R. 41, Ex. 3 at 2.) As a result, he asks this Court to "suppress any and all evidence obtained." (R.41 at 1.) The government, however, maintains that this warrantless entrance "did not have any relevance to the probable cause determination and could not have conceivably influenced the magistrate judge's decision to issue the search warrants." (R. 43 at 6.) The Court agrees.

As the Seventh Circuit has stated, "officers who have probable cause may enter and secure the premises from within to preserve the status quo while a search warrant is obtained without violating the Fourth Amendment's prohibition of unreasonable seizures." *United States v. Alexander*, 573 F.3d 465, 476 (7th Cir. 2009), citing *Segura v. United States*, 468 U.S. 796, 810, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *see also Segura*, 468 U.S. at 809 n. 7 ("Unless there is some kind of a power to prevent removal of material from the premises, or destruction of material during this time, the search warrant will almost inevitably be fruitless.") (quoting Griswold, *Criminal Procedure, 1969–Is It a Means or an End?*, 29 MD.L.REV. 307, 317 (1969)). Furthermore, even if a pre-warrant entrance is unconstitutional, "an illegal entry upon the premises [does] not require the suppression of evidence later discovered pursuant to a valid search warrant issued on the basis of information wholly unconnected to the illegal entry." *Id*., citing *Segura*, 468 U.S. at 813-14; *see also United States v. Etchin*, 614 F.3d 726, 731 (7th Cir. 2010) ("Because the officer's search relied on a later-arriving warrant that was based on information sufficiently unrelated to the initial entry, the evidence discovered in [defendant's] apartment was untainted by the officer's illegal behavior."). Thus, the validity of the agents' pre-warrant entrance into Defendant Flores's work loft is not determinative. Instead, the Court must

determine whether the search warrants eventually issued were supported by evidence sufficiently unconnected to this entrance.

Here, as discussed in the *Franks* analysis above, nothing the agents learned as a result of the entrance at issue was utilized to secure or execute the valid search warrants the Magistrate Judge eventually issued. According to the investigation report, the agents entered the work loft, secured it, exited, and remained in the hallway until the search warrants arrived. In fact, "[w]hether that preliminary misstep had occurred *or not*, the police would have executed the warrant they had obtained, and would have discovered the . . . drugs inside[.]" *Hudson v. Michigan*, 547 U.S. 586, 592, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (emphasis in original). The Court has carefully reviewed the agent's affidavits submitted in support of the search warrant application. The facts in the affidavits were "wholly unconnected" to the agents' pre-warrant entrance into Defendant Flores's work loft.

Accordingly, Defendant Flores's argument to the contrary that "[b]ut for this Fourth Amendment violation, agents would not have the requisite probable cause for a search warrant" fails. (R. 41 at 9.) Even if this were true, however, the Supreme Court has held that the defendant must show more. *See Hudson*, 547 U.S. at 592. Specifically, "even if the illegal entry here could be characterized as a but-for cause of discovering what was inside, we have never held that evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police." *Id*. (citation and quotation marks omitted). Here, Defendant Flores has shown no causation, and this Court rests its decision on the fact that no evidence was collected or used as a result of the agents' pre-warrant entrance into Defendant Flores's work loft.

## IV. Drug Dog Sniff of U-Haul Facility's Hallways

Finally, Defendant Flores argues that "the agents violated Mr. Flores' [sic] Fourth Amendment rights when they conducted a warrantless dog sniff in the hallways outside of his storage locker and work loft." (R. 41 at 11.); *see also* (R. 45 at 7.) The Court disagrees.

"A 'search' within the meaning of the Fourth Amendment occurs only where an individual has a reasonable expectation of privacy in the area searched." *Kelly*, 772 F.3d at 1083-84, citing *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). "If such an expectation is lacking, the individual has no standing to challenge the search." *Id*. at 1084, citing *Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The Seventh Circuit utilizes a number of factors to make this determination: "(1) whether the defendant had a possessory interest in the place searched; (2) whether he had a right to exclude others from the place searched; (3) whether he exhibited a subjective expectation that the place searched [would] remain free from governmental invasion; (4) whether he took normal precautions to protect his privacy; and (5) whether he was on the premises legitimately." *Id*., citing *United States v. Mitchell*, 64 F.3d 1105, 1109 (7th Cir. 1995).

Based on these *Mitchell* factors, Defendant Flores lacked a reasonable expectation of privacy in the hallways outside of his storage locker and work loft at issue, making the dog sniff constitutional. According to the affidavits, the drug dog "walked past the door of storage locker #2340" and "walked past the door of work loft 401B." (R. 41, Ex. 2 at 10.) Defendant Flores did not have a possessory interest in the hallways outside of the locker and loft doors. (R. 43, Ex. 1 (naming "401B" as the leased "Unit#").) He did not have the right to exclude all others from using those hallways. (R. 41, Ex. 2 at 9 (referencing the other tenants who maintain a "series of storage lockers on the second floor of the building").) Furthermore, the building

manager had access to the facility's video cameras recording the hallways. (R. 41, Ex. 2 at 10-11.) Given the hallways' accessible nature, regardless of how limited, Defendant Flores fails to demonstrate an expectation of privacy over them that "society is willing to recognize . . . as reasonable." *United States v. Tolbert*, No. 14-3586, 2015 WL 5091252, at *2 (7th Cir. Aug. 31, 2015).

Nevertheless, Defendant Flores contends—without providing any factual support—that the storage locker and work loft were "quasi-residential" and that "tenants of the U-Haul facility, along with Mr. Flores, treated the work lofts as one would an office space or an apartment, and thus enjoyed a reasonable expectation of privacy." (R. 45 at 4, 5.) "Thus . . . ," Defendant Flores concludes, "a dog sniff in the area immediately surrounding and associated with a residence constitutes a search and requires a warrant." (R. 41 at 12, citing *Florida v. Jardines*, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).) Conversely, the government points to the building's purpose and Defendant Flores's lease application and claims that "the property at issue in this case comprised leased business premises, not a private residence, located within a commercial building." (R. 43 at 14-15.) The building's commercial nature, the government argues, decreases Defendant Flores's expectation of privacy. (*See id.* at 14.)

Given the *Mitchell* analysis above, the Court finds that Defendant Flores lacked a reasonable expectation of privacy in the hallways regardless of the building's purpose and use. If the property at issue was commercial in nature, the *Mitchell* factors become more determinative. *See Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), citing *New York v. Burger*, 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) ("An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home."). If the property at issue was residential in nature,

13

the *Mitchell* analysis in this case is still not altered despite the home being "first among equals" in the eyes of the Fourth Amendment. *Jardines*, 133 S.Ct. at 1414. The U-Haul facility's hallways outside the storage locker and work loft units in this case are very different from the "house," "driveway," and "porch" curtilage subject to a dog-sniff in *Jardines*. *Id*. at 1421; *see also United States v. Scott*, 731 F.3d 659, 663-64 (7th Cir. 2013) ("A court's inquiry into whether a defendant's expectation of privacy in the subject of the search was reasonable for Fourth Amendment purposes is necessarily fact dependent, and whether a legitimate expectation of privacy exists in a particular place or thing must be determined on a case-by-case basis.") (citation and quotation marks omitted). Indeed, "[e]xposing the activities within the common hallway to the world is inconsistent with a subjective expectation of privacy[.]" *Villegas*, 495 F.3d at 767; *see also United States v. Espinoza*, 256 F.3d 718, 723 (7th Cir. 2001) (stating that tenants in multifamily housing buildings lack a legitimate expectation of privacy in the common areas, because landlords and co-tenants are free to admit strangers); *United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991) ("[Defendant] had no expectation that goings-on in the common areas would remain his secret . . . The area outside one's door lacks anything like the privacy of the area inside."). The hallways at issue here, accessible by other tenants and facility managers and staff, do not amount to constitutionally protected curtilage that is "intimately linked to the home, both physically and psychologically." *Jardines*, 133 S.Ct. at 1415, citing *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

Thus, regardless of whether the locker and loft were commercial, residential, or a hybrid of both, Defendant Flores fails to establish a reasonable expectation of privacy over the hallways subjected to the dog-sniff, making the dog sniff constitutional.

**CONCLUSION**

For the reasons explained above, the Court denies Defendant Flores's motion to quash the search warrants and suppress evidence.

DATED: September 22, 2015

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge